EDWARD P. McKINNEY et al., Respondents, *v.* HUGH J. JEW-ETT, as Receiver, etc., Appellant.

Plaintiffs shipped over defendant's road a car-load of hams consigned to themselves at B. The bill of lading provided that the carriers should not be liable as such while the goods were "at any of their stations awaiting delivery;" also that the goods must be removed "during business hours." The hams arrived at B. on a Thursday. Plaintiffs inquired for them at defendant's freight depot on Thursday and Friday, but were told they had not arrived. On Saturday, at about 5:30 P. M., and too late for the removal of the hams on that day, notice of the arrival for the first time was given to plaintiffs, who removed them Monday morning, when it was found that they had been seriously injured by the heat and delay, before the commencement of business hours on Monday. In an action to recover such damage, *held* that defendant was liable as a carrier; that the goods could not be considered as "awaiting delivery" until after the duty of the carrier was done, and he was entitled to remain passive "awaiting" the action of the consignee; that is, until after the carrier had given notice of the arrival to the consignee, at a time which furnished a reasonable opportunity for him to get them.

*It seems* that if defendant, after arrival, was responsible only as a warehouseman, he was not excused for negligence.

(Argued October 16, 1882; decided October 24, 1882.)

APPEAL from a judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 25, 1881, which affirmed an order of Special Term, denying a motion for a new trial and directed

judgment in favor of plaintiffs, on a verdict. (Reported below, 24 Hun, 19.)

This action was brought against defendant, who, as the receiver of the Erie Railway Company, was operating that road, to recover damages to a cargo of green hams and shoulders purchased by plaintiff at Chicago, consigned to them at Binghamton. The material facts appear in the opinion.

*Chapman & Lyon* for appellant. After defendant had notified plaintiffs the goods were ready to be taken away, and after plaintiff had receipted for them, defendant was not liable as a common carrier under the contract. (49 N. Y. 226.) The bill of lading was the contract between the parties, and could not be contradicted by proof of usage or custom. (Redfield on Carr., § 249, note 5.)

*Isaac S. Newton* for respondents. The defendant is liable for negligence, notwithstanding the exemption clause of the bill. (*Nichols* v. *N. Y. C. & H. R. R. R. Co.*, 15 Wkly. Dig. 20 and refs.; *R. R Co.* v. *Lockwood*, 17 Wall. 357; *N. J. Steam Nav. Co.* v. *Merchants' Bank*, 6 How. [U. S.] 378; *Steinway* v. *Erie Railway*, 43 N. Y. 123; *Lamb* v. *Camden & Co.*, 46 id. 271; *Hill* v. *Syracuse, etc., Railroad Co.*, 73 id. 351; *Bostwick* v. *B. & O. R. R. Co.*, 45 id. 712; *Heyl* v. *Inman Steamship Co.*, 14 Hun, 566; *Westcott* v. *Fargo*, 61 N. Y. 542, 553; *Whitworth* v. *Erie Railway Co.*, 45 N. Y. Supr. Ct. 602.) The condition and measure of liability in this class of warehousemen is precisely the same as that of carriers. (Story on Bailments, §§ 450, 450 a; *Coleman* v. *Livingston*, 4 J. & S. 32, 38; 24 Hun, 22.) The fact that the meats received the injury after their arrival entitles plaintiffs to recover the damage, without any reference to the question of negligence. (*Rawson* v. *Holland*, 59 N. Y. 611; *McDonald* v. *West. Trans. Co.*, 34 id. 497; *Conduit* v. *Grand Trunk R. R. Co.*, 54 id. 505; *Keeney* v. *Grand Trunk R. R. Co.*, 59 Barb. 134–5; 47 N. Y. 529.) It was the defendant's duty to give notice, and a failure to do so was negligence. (54 N.

Y. 354; Story on Bailments, §§ 543–5; 49 N. Y. 442; 44 id. 511; 34 id. 499; 3 Abb. Dec. 388; *McAndrew* v. *Whitlock*, 52 N. Y. 40; *Gleadell* v. *Thompson*, 56 id. 194; *Redmond* v. *Liverpool, etc., Co.*, 46 id. 578; 3 id. 322; 10 id. 438; 26 id. 85; *Eagle* v. *White*, 6 Whart. 505; Angel on Carriers, §§ 287, 288; *R. R. Co.* v. *Maris*, 2 Wkly. Dig. 592; *Hill* v. *Humphreys*, 5 Watts & Serg. 128.) The plaintiffs were not bound by any stipulations of the so-called bill of lading. The common law makes the contract here. (*Corey* v. *N. Y. Cent.*, 45 N. Y. 716; *Bostwick* v. *Balt. & Ohio R. R. Co.*, id. 712; *Germania Fire Ins. Co.* v. *M. & C. R. R. Co.*, 72 id. 90; *Schiff* v. *N. Y. Cent.*, 52 How. 92; 16 Hun, 278.) The questions of negligence and of contributory negligence were for the jury. (*Zin* v. *N. J. Steamboat Co.*, 49 N. Y. at p. 445–6; *Railroad Co.* v. *McElwee*, 67 Penn. St. 311; *Munell* v. *Northern Central R. R. Co.*, 67 Barb. 531; *Tierney* v. *N. Y. Cent. R. R. Co.*, id. 538.) The defendant, as receiver, has the same liability that the company would have had were the company running the road. (*Camp* v. *Barney*, 4 Hun, 373; *Stevenson* v. *This Defendant*, 16 id. 210; *Terry* v. *This Defendant*, 17 id. 395; *Faulkner* v. *Hart*, 12 J. & S. 483; 99 Mass. 395; 118 id. 201; 29 Vt. 201.)

Finch, J. The defense in this case was rested mainly upon the terms of the shipping bill or receipt. That provided in substance that the carriers should not be liable as such while the goods were " at any of their stations awaiting delivery " to the consignee ; and that during such period the carriers should be liable only as warehousemen. The property transported was a quantity of hams, shipped at Chicago and reaching Binghamton, which was the point of delivery, in due season and within the ordinary time. They arrived on Thursday. No notice of their arrival was given to the consignees. The latter, through their cartman, inquired on Thursday and on Friday for the hams, and he was told at the freight office of defendant that they had not arrived. As matter of fact they were then in a car which had arrived on Thursday, and which

stood on a side track a short distance from the depot. On Saturday afternoon at about half-past five o'clock notice of the arrival for the first time reached the plaintiffs. The same shipping bill required freight to be removed from the cars " during business hours." The plaintiffs, assuming that no time remained in which to remove their freight during what remained of the business hours of that day, waited over Sunday and unloaded their hams on Monday, when they were found to have been seriously injured by the heat and the delay.

The terms of the shipping bill did not release the carrier from liability for negligence. (*Nicholas* v. *N. Y. C. & H. R. R. R. Co.*, 15 Wkly. Dig. 20.) In the absence of such an express and definite stipulation, it is not to be argued out from language which conceals, if it contains it. Such exemption, however, is not claimed by the carrier, but rather that his responsibility was lessened, though not destroyed. His liability, in the absence of special contract or proven custom, made him an insurer until delivery, or what was deemed tantamount to delivery. It remained until either the property transported was actually delivered at its destination, or until notice was given to the consignee and the expiration of a reasonable time for its removal. (*Fenner* v. *B. & State Line R. R. Co.*, 44 N.Y. 511; 4 Am. Rep. 709; *Zinn* v. *N. J. Steamboat Co.*, 49 N. Y. 442; 10 Am. Rep. 402; *McAndrew* v. *Whitlock*, 52 N. Y. 40; 11 Am. Rep. 657; *Gleadell* v. *Thomson*, 56 N. Y. 194.) This common-law liability it was evidently the design of the contract in some degree to lessen, and that was sought to be done by substituting the milder responsibility of a warehouseman, while the property, though arrived, was " awaiting delivery." The defendant construes this stipulation to mean that from the moment of the arrival of the hams his liability as carrier ended, and from that time until the delivery, on the following Monday, he was responsible only as warehouseman. If that were so, it would not excuse his negligence. But certainly, property cannot be said to be " awaiting delivery " when its arrival is not only not announced, but actually denied; when its delivery is refused and it is negligently withheld from the possession of

the consignee. That was the case as to the car-load of hams from their arrival on Thursday until at least the notice given on Saturday afternoon. It is to be observed that the stipulation depends upon two conditions. The property must be not only "at the station" but also "awaiting delivery." This implies not only the arrival, but the completion of whatever, on the part of the carrier, is necessary to be done to leave the risk of further delay upon the consignee. The goods are "awaiting delivery" only after the duty of the carrier is done, and he is entitled to remain passive "awaiting" the action of the consignee.

But did the carrier's responsibility change on Saturday? The shipping bill provided that goods must be removed "during business hours." Suppose the notice is given during the last five minutes of business hours on Saturday, and the cars and office remain closed until Monday morning. It is very clear that such notice, if a technical, is not a real and substantial performance of the condition. The notice in this case, as the jury found, came too late for the removal of the property on Saturday. The next day was Sunday. Practically, the notice given at so late an hour amounted to saying this to the consignee: "Your hams have arrived, but under our rules you cannot have them until Monday." Could they be said to be "awaiting delivery" when they were kept locked in the cars, and could not be removed with ordinary effort until Monday; and that, through no fault of the consignee, but solely because of the carrier's own regulations? We think not.

It is said this construction nullifies the provision of the contract and leaves it nothing upon which to operate; that it must have some force, and it gets none if the common-law liability remains unaffected. That rule properly applies only where two reasonable constructions are possible, and choice is to be made between them. In such event the law prefers the construction which gives the language effect. But no rule authorizes us to pervert the fair meaning of words, and to substitute, for something that is said, what is not said at all. We do not think the language of this shipping bill is doubtful or ambiguous. It

means, as we have stated, that after the goods have arrived, and the carrier has given notice to the consignee, at a time which furnishes reasonable opportunity for him to get them, then the carrier's responsibility as such ends; and then, and not until then, are the goods " awaiting delivery." It is true, therefore, that the stipulation has little or no effect upon the character of the common-law liability. It is possible that it has some, although very narrow and slight. The general rule holds the carrier as such until the end of a reasonable time for removal. It is possible that our construction would close his liability as carrier at the beginning of such reasonable time after notice. But we need not decide that here, for no facts in the case call for its determination.

And that is the answer also to the further contention, that the trial court denied even this slender effect to the stipulation and imposed the full common-law liability. That is true, but we cannot see how it was at all material. There was no pretense that any of the injury to the hams occurred after the commencement of business hours on Monday morning. What the liability of the defendant was, after that moment, was of no consequence, and nothing in the case required its determination. The injury happened while the defendant was liable as carrier, and the learned judge was right in so declaring.

The other questions in the case are not important and furnish no ground for reversal.

The judgment should be affirmed, with costs.

All concur, except RAPALLO and TRACY, JJ., absent.

Judgment affirmed.