term (59 N. Y. Supp. 183) reversing a judgment in favor of plaintiff, plaintiff appeals.　Dismissed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Wasserman & Jacobus, for appellant.

August P. Wagener, for respondent.

MacLEAN, J.　It appeared in evidence that the plaintiff, under date of November 3 and December 8, 1893, delivered to one Beyer, a retail liquor dealer, a quantity of cigars, to be sold for the plaintiff upon commission,—to be accounted for monthly.　Thereafter the defendant took possession of the stock, upon the latter's premises, under sale in mortgage foreclosure, and now claims ownership of goods in controversy by bill of sale executed by Beyer, and dated December 15, 1893.　There was sufficient evidence, however, to warrant the jury in finding, as they did, ownership and right to possession in the plaintiff, despite his act in clothing Beyer with actual and apparent power to sell, because the defendant, though innocent, was not a purchaser for value, surrendering nothing beyond an antecedent debt, insufficient in law.　Barnard v. Campbell, 58 N. Y. 73.　But under the circumstances of this case, and the decision of Tinsdale v. Murray, 9 Daly, 446, we cannot entertain this appeal.

Appeal dismissed, with costs.　All concur.

---

(30 Misc. Rep. 444.)

DIAMANT v. LONG ISLAND R. CO.

(Supreme Court, Appellate Term.　February 8, 1900.)

1. CARRIERS—FREIGHT—DELIVERY—NOTICE TO CONSIGNEE.

A bill of lading required the carrier to transport merchandise and "tender it to the consignee," and that the carriage should "be complete, and freight charges earned, when the merchandise has been held a reasonable time, without notice," subject to the owner's order, at the point of delivery. The goods shipped were received by the carrier at the point of delivery, but no notice was given the consignee of their arrival, and he failed to secure them on application.　*Held*, in an action by the consignor to recover the value of the goods, that the completion of the carriage referred to in the second clause did not dispense with defendant's express obligation to tender the goods to the consignee, though the requirement would have been satisfied by giving him notice of their arrival.

2. SAME—EVIDENCE—CUSTOM.

In an action by a consignor to recover the value of goods delivered to a carrier, which the latter agreed to transport and tender to the consignee at the destination, evidence of a custom dispensing with the requirement of tender of delivery in the case of freight shipments, as distinguished from express matter, was inadmissible.

MacLean, J., dissenting.

Appeal from municipal court, borough of Manhattan, Fifth district.

Action by Louis Diamant against the Long Island Railroad Company to recover for the nondelivery of goods.　From a judgment for plaintiff, defendant appeals.　Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

William J. Kelly, for appellant.
Louis Diamant, pro se.

LEVENTRITT, J. This action is brought for the breach of a contract of carriage, and the precise question to be determined is whether, under the conditions of the bill of lading, the defendant's obligation was limited to a mere transportation of the goods, without giving notice of arrival, or making tender of delivery. On the 22d day of August, 1898, one Marculescu forwarded by the defendant a box of groceries, directed to one Harry Diamant, a private in the 71st regiment, New York volunteers, encamped at Montauk Point, after the return of the troops from Cuba. On the following day the plaintiff similarly sent to Diamant a box of fruit. Both shipments were made as freight, and neither ever reached the possession of Diamant. Marculescu assigned his claim against the defendant to the plaintiff, who thereupon brought this action to recover the value of the contents of both boxes. It appears that the packages arrived at Montauk Point no later than the 25th day of August, 1898. Between that date and the 27th of that month, when the regiment left the encampment, Diamant, according to his testimony, made frequent attempts to locate, and secure the delivery of, the goods consigned to him. He applied at a temporary shed erected in close proximity to defendant's passenger station, where, he states, both freight and express packages were stored. He then made inquiries of several agents, one of whom he describes as the "head man or the head agent of the Long Island Railroad Company." He says that he also inquired at the station, and of every man in charge, and that they declined to overhaul the large accumulation of packages for the purpose of finding his. The defendant asserts that the temporary shed was used exclusively for express packages, and not for freight; that the only freight office was located in the passenger station, where all applications and inquiries should have been made; that all freight deliveries were made directly from the cars, there being no structure or building for that purpose. It appears that throughout the period there was a very great congestion of freight, with very limited facilities for handling it. One hundred and fifty to 200 cars loaded with freight were stalled on six or seven sidings near the station. The defendant admitted that it was customary to notify consignees of the arrival of goods, either by postal card, or through the agency of a personal representative. The record does not disclose any notice to Diamant until the 12th day of October, 1898, when a postal card was addressed to him at his New York residence. There was concededly no tender. Each of the parties to this litigation invokes a condition on the bill of lading in support of a right to judgment. The plaintiff relies on the first condition, which reads:

"It is mutually agreed by this contract that the Long Island Railroad Company shall transport the merchandise named herein, with all due care and dispatch, to its destination, * * * and tender it to the consignee * * *

in the same good order and condition in which it was receipted for at point of shipment."

And he claims that the defendant's liability continued until tender was made. The defendant argues that the scope of this provision is restricted by a subsequent one which reads:

"The carriage of said merchandise shall be complete, and freight charges earned, when it has been held a reasonable time, without notice (say, twelve working hours), subject to the owner's order, at the station or place where it is above agreed to be delivered; and, if not then removed by the person or party entitled to receive the same, it may be removed and stored, or kept in the car, station, or place of delivery of the carrier, or otherwise, at the sole risk and further expense of such person or party, without notice."

We are of the opinion that the judgment rendered in favor of the plaintiff is justified both in law and in fact. The first clause required tender. The other did not dispense with it. The two provisions are not inconsistent. So far from modifying each other, they are not even connected. They are separated on the face of the contract by a number of intervening clauses whose subject-matter is foreign to both. The first clause provides for the carriage and delivery; the other for a limitation of the carrier's liability as an insurer, and the commencement of that as a warehouseman. The completion of the carriage referred to cannot be regarded as dispensing with the express obligation to tender assumed by the defendant, made in recognition of the law that some notice to the consignee is necessary. McKinney v. Jewett, 90 N. Y. 267; Brand v. Steamboat Co., 10 Misc. Rep. 128, 30 N. Y. Supp. 903. The requirements of the tender would have been satisfied by mere notice to the consignee, but the tender would at some time have to be made; and giving effect to the clause invoked by the defendant would, at most, have changed the nature of the defendant's liability at the time of such tender. Even granting the construction contended for by the defendant, and charging the consignee, in the absence of notice, with the unreasonable duty of making constant inquiries, and seeking his goods among the 150 or 200 cars, the fact would still remain that he testified to demands made for his property, and an admission that it was on hand. That testimony, though contradicted, would in itself have justified the finding in his favor.

The evidence which the defendant sought to introduce on the subject of a custom dispensing with the requirement of tender in the case of freight shipments, as distinguished from express shipments, was obviously incompetent, in view of the express contractual stipulation to tender. The judgment below was correct, and should be affirmed.

Judgment affirmed, with costs to the respondent.

FREEDMAN, P. J., concurs.

MacLEAN, J. (dissenting). One Harry Diamant, a private in the 71st N. Y. S. V., was, with his regiment, from the 14th or 15th of August, 1898, to the morning of the 27th of that month, in encampment at Montauk Point, where, so far as appears, the defendant had

neither office nor depot, and which was about two miles from the de-
fendant's railway station. The defendant carried wares classed as
freight and as express matter, receiving them at different depots.
Express matter is charged for at a higher rate of compensation, and
it delivered wares of that class, by its wagons, to persons in the differ-
ent streets of the encampment. On August 23d the plaintiff herein
bade a boy take a box of fruit to the Long Island Railroad Company,
to be shipped to Harry Diamant. The boy delivered the box at the
freight depot of the defendant, and took therefor a "freight receipt,"
which he gave to the plaintiff, and which the plaintiff kept until the
bringing of the present action. The plaintiff wrote his brother Harry
the following day (August 24th) that he had sent the box "yesterday
morning by express." Thus misinformed, and so misled, Harry Dia-
mant went to the temporary structure of the defendant for the recep-
tion of express matter, and asked for his box; taking out the letter
received from his brother, and showing that the box had been shipped.
During the one or two remaining days of his sojourn he also in-
quired of the drivers of express wagons delivering parcels about the
camp for the package above mentioned, and for another, similarly
shipped by another person, whose claim is included in this action by
assignment. He never made any inquiry, however, at the railway
station of the defendant, where it had a freight agent in an office
adjoining the passenger station; nor did he ask any one in or about
the freight cars standing upon sidings in which freight was kept in
the absence of a depot to receive the sudden influx of such matter
at Montauk; and the only goods he saw being taken from the cars
were "from express cars, and these express cars were attached to the
regular passenger trains." It is true that, when directly led thereto
by his brother, the plaintiff and counsel herein, the soldier said he went
to the "head man"; the "head man of the Long Island Railroad Com-
pany"; "the chief man there." But it is also true that he said upon
cross-examination that he only inquired of the men who ran the
wagons, and of the persons in the sheds where the wagons came from.
His only inquiries were, therefore, and naturally, about express mat-
ter, and of people charged with the handling of express matter. The
packages were not delivered to the consignees, nor did the defendant
give him any notice that they had reached Montauk. It is claimed by
the plaintiff that the defendant is liable in damages for the loss of
goods, because the first condition printed upon the back of the freight
receipt is:

. "It is mutually agreed by this contract that the Long Island Railroad Com-
pany shall transport the merchandise named herein, with all due care and
dispatch, to its destination, or to the terminus of its line in the direction of
destination, and tender it to the consignee * * * in the same apparent
good order and condition in which it was receipted for at the point of ship-
ment."

But the first and most prominent condition of the carrier's under-
taking, and that not upon the back, but upon the face, of the papers,
was:

"It is understood and agreed that this receipt is only to this carrier's ter-
minus."

That, for present purposes, was the station at Montauk, and not the site of the encampment, two miles away. It was provided, too, in another condition, upon the back, that:

"The carriage of said merchandise shall be complete, and freight charges earned, when it has been held a reasonable time, without notice (say, twelve working hours), subject to the owner's order, at the station or place where it is agreed to be delivered; and, if not then received by the person or party entitled to receive the same, it may be removed, and stored or kept in the car * * * of the carrier, or otherwise, at the sole risk and further expense of such person or party, without notice."

This special agreement takes the present case out of the rule laid down in McKinney v. Jewett, 90 N. Y. 267, 270, upon which the plaintiff relies, and wherein it was held that, in the absence of special contract or proven custom, the stringent liability of a common carrier obtains until after actual delivery of the goods, or, tantamount to delivery, until notice shall be given to the consignee, and the expiration of a reasonable time for removal of the goods. As the defendant proved that it had a freight agent and office in the building in which was also its passenger station at Montauk, the end of its line quoad hoc, the learned justice erred in holding, as he did, that, as the contract called for delivery of the freight at the station of the company, and the goods remained for several weeks aboard the cars, and were never delivered at any station at all, the consignee could not be expected to go around and inquire for his goods, and thereupon gave judgment for the plaintiff. It was also error on the part of the learned justice to exclude the evidence proffered as to the custom of the defendant and of other railroad companies respecting the difference between freight and express matter. For these errors, the judgment should be reversed.