"It is not sufficient for the plaintiff to succeed that he should show, and that he cannot recover merely by showing, he was entitled to possession of the property taken by the marshal on May 25, 1907, or was in possession thereof."

The court answered:

"I so charge. You must take in consideration my former charge, but this, I charge, is right technically."

Here was no request to charge an abstract proposition of law, but a correct statement of the law applied specifically to this case. It was not only technically correct, but, if charged unreservedly, would have tended to cure the error in the justice's original charge. In the form charged it merely emphasized that error. Thereafter the defendants presented numerous requests to charge, and, in view of the meagerness of the original charge, each of these requests deserved consideration.

The rulings of the trial justice on these requests served only further to confuse the issues. In some instances he refused to charge except as charged when the charge failed to touch on the point. In one instance he charged, undoubtedly through inadvertence, that there was no claim that the plaintiff was in possession of the goods, and in another instance he charged that there could be no recovery without proof of the actual delivery of the mortgage, although there is no dispute that the mortgage was never delivered.

The respondent seeks to sustain the verdict in spite of these errors by the claim that these errors were inadvertent, and that the trial justice did not mean to say what the record shows that he said. I have not the slightest doubt but that the record either fails to correctly show what the justice actually said or that in the necessary haste of considering requests he either misunderstood the requests, or forgot the shortness of the original charge. The sole question before us, however, is whether the record shows a proper presentation of the questions to the jury, and this question, I believe, must be answered in the negative.

Judgment should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.

---

### BACHARACH v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Second Department. February 17, 1911.)

1. CARRIERS (§ 146*)—FREIGHT—DELAYS—EVIDENCE—SUFFICIENCY.
    Evidence *held* to sustain a finding of a carrier's delay in notifying the assignee of the arrival of perishable freight.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 635; Dec. Dig. § 146.*]

2. CARRIERS (§ 146*)—PERISHABLE GOODS—CARE—EVIDENCE—WEIGHT.
    Evidence *held* to show that a carrier did not, as warehouseman, take reasonable care of perishable goods which were refused by the consignee for delayed delivery.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 635; Dec. Dig. § 146.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Brooklyn, Fifth District.

Action by Milton Bacharach against the Lehigh Valley Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

William C. Prime and Ernest C. Morse, for appellant.

Joseph J. Baker, for respondent.

THOMAS, J. The plaintiff, consignor, has recovered from defendant damages for the latter's neglect to carry duly, and to care for, perishable goods, meats, and to notify plaintiff of the refusal of the consignee, Gross, to receive them. The goods were delivered for shipment on August 5, 1908. Three or four days was a reasonable time for carriage to their destination at Perth Amboy, N. J. Defendant's evidence given by Poulson, its agent at that place, shows that they arrived on August 8th. Plaintiff contends that they did not arrive at that date, or that, if they did, the agent at Perth Amboy, although frequent inquiry was made of him, did not advise the consignee that they had arrived even until 10 days or 2 weeks after August 8th. Poulson testified that all conversations with the consignee were before August 8th, and that before that date Gross gave notice that he would not receive the goods. Gross testified that he did not refuse to take the goods until notified of the arrival 10 days or 2 weeks after August 8th. The evidence shows that the goods, kept boxed, would become mouldy within four or five days. The boxes were marked with the consignee's and consignor's names and addresses, and with the word "Salami" or "Farmer." The consignee was well known to the agent Poulson, and goods were often consigned to him. The shipping bill shows that defendant knew under what articles and classification "Acme Salami" and "Farmer" came. Its letter of September 28th, notifying the consignor, states that the goods were "10 cases of smoked meat." The shipping receipt also indicates that the carrier knew the nature of the goods. Ferris, the terminal agent at Brooklyn, was notified by plaintiff about August 9th or 10th that he was advised by letter from Gross that the shipment had not arrived, and the agent promised to start a tracer. But no communication was given plaintiff until September 28th. So the agent Poulson, on several occasions asked by Gross about the arrival, advised Gross of the arrival some days after their actual arrival, and Ferris was advised on August 9th that Gross had reported them not arrived, and a tracer was promised. Poulson knew that Gross had refused the goods, and that they were perishable.

Poulson carries the transaction back into July, and would place the conversation with Gross and his refusal to accept at times between the middle of July and August 8th. But the finding favors the plaintiff, and the evidence amply supports it. Poulson testified that it was not the custom to notify consignees; but he made this unaccustomed notice to Gross, and, if Gross' testimony be accepted, the notification was belated. Poulson appreciated that a notification was necessary,

and he made it at such time that it entailed a refusal by the consignee to accept the goods, and this fact, joined to the promise to send a searcher, shows either that the goods had been unduly delayed, or that the agent delayed notification, and the defendant, advised of the claimed delay in carriage and the refusal to accept, allowed the goods to perish in the warehouse, taking no proper care whatever of them, although it should have known that meats would not bear close boxing in August for a long period.

The defendant contends that the carrier's contract does not involve notification to the consignor of inability to deliver freight, and that it is not its duty so to do, unless reasonable care require it (Weed v. Barney, 45 N. Y. 344, 6 Am. Rep. 96; Manhattan Shoe Co. v. C., B. & Q. R. Co., 9 App. Div. 172, 41 N. Y. Supp. 83; Fisk v. Newton, 1 Denio, 45, 43 Am. Dec. 649; Adler v. Weir, 49 Misc Rep. 134, 96 N. Y. Supp. 736; Grossman v. Fargo, 6 Hun, 310), yet in this instance the consignee was misinformed as to the time of arrival, if they did arrive on August 8th (McKinney v. Jewett, 90 N. Y. 267). The company notified undertook to trace them, but remained content with storing known perishable articles in an unfit place without further attention or thought, and did not take such care of the goods as reasonable care required of a warehouseman. Laporte v. Wells Fargo & Co.'s Express, 23 App. Div. 267, 271, 48 N. Y. Supp. 292; Scheu v. Benedict, 116 N. Y. 510, 22 N. E. 1073, 15 Am. St. Rep. 426; Barron v. Eldredge, 100 Mass. 455, 459, 1 Am. Rep. 126; Buffalo Grain Co. v. Sowerby, 195 N. Y. 355, 88 N. E. 569. It is urged that the neglect to give notice did not cause the loss, as the goods were perishable within four or five days after shipment, or August 5th, and the notification before the expiration of that time was not so practicable as to prevent the loss. But if, pending such notification and action, the defendant had cared prudently for the meats, the deterioration would not have occurred, and even without such notice the duty of similar prudence rested upon it.

The judgment should be affirmed, with costs. All concur.