HOPE LEONARD BRAGG, Respondent, *v.* GEORGE C. TAYLOR, as President of the AMERICAN EXPRESS COMPANY, an Unincorporated Association, Consisting of Seven or More Persons, Appellant.

First Department, April 6, 1923.

Carriers — action to recover value of goods destroyed after reaching destination in interstate shipment — goods were shipped by plaintiff's agent by express with direction to notify plaintiff and to hold until advised as to delivery — notice of arrival received by plaintiff late in afternoon — goods destroyed by fire same night — defendant's liability as carrier did not terminate before loss occurred — express receipt limited defendant's liability to fifty cents per pound — plaintiff's agent was not required to state specifically in writing value of goods — limitation not enforcible under Interstate Commerce Act as it read at time cause of action arose — First Cummins Amendment construed — limitation enforcible under Second Cummins Amendment.

In an action to recover the value of goods shipped by express from Medina, O., to New York city, it appeared that the plaintiff's agent delivered the goods, which were in trunks and bundles, to the defendant's agent at Medina, with specific instructions that the goods were to be held at the express office in New York city until the defendant was advised where to make delivery, and the defendant was requested to notify the plaintiff on the arrival of the goods in New York city; that the goods reached New York city on June 7, 1915, and on the same day a notice of their arrival was mailed to the plaintiff; that the notice was not received by the plaintiff until after five o'clock in the afternoon of June 9, 1915; that the plaintiff immediately paid the express charges but gave no directions as to the disposition of the goods; that on the same night at about nine o'clock a fire broke out in defendant's building wherein plaintiff's goods were stored and practically destroyed the goods, and that the fire was not caused by any negligence on the part of the defendant.

*Held,* that the liability of the defendant as a carrier did not terminate prior to the destruction of the goods, since the plaintiff was entitled to reasonable time after notice was actually received by her to remove the goods from the defendant's possession, and under the facts of the case reasonable opportunity to do so was not afforded after notice of arrival was received and before the goods were destroyed.

The limitation in defendant's express receipt to the effect that where a greater value is not stated the defendant will not be liable for more than fifty cents per pound on shipments in excess of 100 pounds, is not enforcible against the plaintiff, since at the time the shipment was made the defendant could not thus limit its liability under the First Cummins Amendment to the Interstate Commerce Act, except where the shipper was required to state specifically, in writing, the value of the goods, which was not done in this case.

*It seems,* however, that under the Second Cummins Amendment the limitation of liability to fifty cents per pound, where the value of the goods is not stated, will be enforced under facts similar to those in this case.

APPEAL by the defendant, George C. Taylor, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office

First Department, April, 1923.            [Vol. 205

of the clerk of the county of New York on the 10th day of February, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of February, 1922, denying defendant's motion for a new trial made upon the minutes.

*Carter, Ledyard & Milburn* [*Edwin DeT. Bechtel* of counsel; *A. Delafield Smith* with him on the brief], for the appellant.

*Fiero & Fiero* [*Joshua M. Fiero, Jr.*, of counsel], for the respondent.

MERRELL, J.:

The testimony in the case fairly discloses the following facts: The plaintiff for many years was a traveling theatrical producer, traveling from town to town and producing theatrical entertainments. Since 1902 or 1903 the plaintiff had been producing a play known as " Alice in Wonderland." Her practice was to go to a town, interest the local residents of the town, and with the aid of children and local talent conduct rehearsals and produce the play. For this purpose the plaintiff owned a considerable amount of theatrical paraphernalia, consisting of costumes, scenery and appliances for producing her play. In September, 1914, at Medina, in the State of Ohio, she stored her properties contained in four trunks, a bundle or bale, and a lamp or lighting apparatus, with the warehouse firm of Branch & Longacre. The plaintiff testified that the trunks contained certain of the scenery and costumes used by her in giving productions. The trunks and articles remained in storage with the Medina warehousemen until June, 1915, at which time the plaintiff wrote the warehousemen, instructing them relative to shipment of the goods to New York. The plaintiff was accustomed to make such shipments and gave definite instructions and requested the warehousemen to carry the same out to the letter. This the warehousemen did, attaching shipping tags to the various articles and addressing the shipment pursuant to plaintiff's instructions to plaintiff at New York city, with instructions to the express company to hold at its office in New York city until advised where to make delivery thereof, and to notify at 308 West One Hundred and Twelfth street. Longacre, one of the Medina warehousemen, who, in the transaction, must be assumed as acting as the agent of the plaintiff, at the time of delivering the trunks and other properties to the defendant's express agent at Medina, also delivered to the defendant's agent a slip setting forth the instructions as to the disposition of the shipment at New York. This slip read as follows:

" D-Hope Leonard
" Hold at express office until advised where to make delivery
" Please notify at # 308 West 112th St., New York City.
                              " DAWSON S. LONGACRE."

The defendant's agent then prepared the uniform express receipt, which was handed to and accepted by the shipper at the time of the delivery of the goods. At that time the defendant's agent inquired the value of the property shipped, and the plaintiff's agent stated that he did not know the value thereof. The testimony is to the effect that the entire shipment weighed 885 pounds. Noted upon the express receipt are the separate weights of each article. An addition of the separate weights stated discloses that there was an error in addition, and that the weight of the several items noted was 785 pounds instead of 885 pounds. However, the evidence was to the effect that the entire shipment weighed 885 pounds, and that weight was inserted as a part of the description of the goods in the line upon the receipt dealing with value. The shipment at Medina was made on June 5, 1915. According to the testimony of the man in charge of the New York express terminal, the goods arrived in New York at the express office of the defendant at Tenth avenue and Thirty-third street on the afternoon of June 7, 1915. The defendant's representative testified that upon their arrival the goods were segregated from other shipments on the platform and were taken upstairs to the warehouse or " on hand " department of the defendant company and there stored. In compliance with the instructions to notify the plaintiff at 308 West One Hundred and Twelfth street, notice was mailed by defendant's employee personally at seven o'clock in the evening of said June 7, 1915, notices being sent both to the plaintiff, at the aforesaid address and to Branch & Longacre, her agents at Medina, O. The plaintiff testified that she did not receive the notification addressed to her until after five o'clock in the afternoon of June 9, 1915. The only question submitted to the jury upon the trial was as to when the plaintiff received this notification card. The jury found that it was received " June 9, 1915, after five P. M." Immediately upon receipt of the card the plaintiff returned it to the express company with her check for the transportation charges, sixteen dollars and eighty-two cents. She at that time gave no directions as to disposition of the goods. On the same night of June 9, 1915, at about nine o'clock, a fire broke out in the defendant's warehouse where plaintiff's goods were, and it is claimed that as a result thereof said goods were practically destroyed. Three days later the shipment in badly damaged condition was tendered to the plaintiff, but was refused. A month later she accepted the shipment and found the contents wet and moldy, and, as she testified, many of the things rotted. The following stipulation was entered into by the parties: " In consideration of the acceptance by the defendant of the plaintiff's

amended complaint, verified October 1st, 1917, it is hereby consented and agreed that after the goods to recover damages for which this action is brought arrived in New York City, they were placed by the defendant in its warehouse at Tenth Avenue and Thirty-third Street, Borough of Manhattan, City of New York, and while the goods were in said warehouse and on or about June 9th, 1915, a fire occurred, and that said fire was not caused by the negligence of the defendant, its agents or servants; that by reason of said fire the goods in question were damaged, and that the damage for which this action is brought was caused by said fire."

The first important question involved upon this appeal is as to whether the defendant is to be held as a common carrier, and incidentally as an insurer of plaintiff's property which was destroyed, or whether at the time of the damage to plaintiff's property the defendant was merely a warehouseman, in which case, the parties having stipulated that the fire occurred without negligence on the part of the defendant, the defendant would not be responsible for the damages sustained by the plaintiff. The defendant contends that, under the peculiar shipping instructions given defendant by plaintiff's agents at Medina, O., the defendant, at the time of the destruction of the property, was not occupying the position of a common carrier, but was a warehouseman only. Many authorities are cited by the defendant in support of such position. I do not think, from a careful examination of these authorities, that they are controlling upon the facts presented in the case at bar, and that the liability of the defendant at the time of the destruction of plaintiff's property was that of a carrier. The special instructions furnished the defendant to hold delivery until advised related merely to the time and place of delivery and did not relieve defendant from its ultimate duty to deliver the goods to plaintiff. Such instructions required notification of the plaintiff, and the plaintiff was entitled to a reasonable time, after receipt of notice, to arrange for the removal of the property shipped. The indorsement upon the receipt delivered to plaintiff's agents by the defendant's agent at Medina at the time of shipment that the carrier was to " Hold until advised, delivery," and the express written direction to the defendant to " Hold at express office until advised where to make delivery," surely indicated that delivery was to be made, and that carriage was not complete until the goods had been delivered to plaintiff at such place in New York as she so advised. Ordinarily and under prevailing practice express companies, differing from freight carriers, are expected to deliver goods at the residence or place of business of the consignee. It seems to me that, under the facts disclosed in the present case,

the defendant occupied a position similar to that of a freight carrier whose duty it would have been to notify the consignee of the receipt of the freight, and which could not have been absolved of responsibility with reference thereto until the consignee had had a reasonable opportunity to remove the freight. Until the expiration of such reasonable opportunity for the plaintiff to remove her property, the defendant's position was not changed from that of a carrier to that of a warehouseman. It has been held in other jurisdictions that if there is a custom of giving notice by an express company to the consignee, the consignee is entitled to a reasonable time to act before the liability of the express company as a carrier ceases. (*Roberts* v. *Union Line Express Co.*, 2 Ohio Dec. 577; *Hutchinson* v. *United States Express Co.*, 63 W. Va. 128.) In *McKinney* v. *Jewett* (90 N. Y. 267) a bill of lading of goods provided that the carrier should not be liable as such while the goods were awaiting delivery. There was no provision requiring the carrier to notify the consignee, as in the case at bar. The court, however, held in that case that the goods would not be regarded as held " awaiting delivery " until after the expiration of a reasonable time after notice to the consignee. We think that rule should be applied to the facts in the case at bar, and that the liability of the defendant as a carrier did not terminate prior to the destruction of the goods, and that the court upon the verdict of the jury that the notice of the arrival of the goods was delivered to the plaintiff after five o'clock in the afternoon of June 9, 1915, properly held that the plaintiff did not have a reasonable opportunity to remove the goods before they were destroyed. (*McKinney* v. *Jewett*, 90 N. Y. 267; *Solomon* v. *Philadelphia & New York Express Steamboat Co.*, 2 Daly, 104.) I, therefore, am of the opinion that the defendant, at the time of the injury to plaintiff's property, was still occupying the position of a carrier and was responsible for the loss of the goods under the terms of the contract of shipment.

A more difficult question now presents itself as to the extent of the defendant's liability. At the time the goods were left with defendant's agent at Medina, O., inquiry was made of plaintiff's agent by the express agent at Medina as to the value of the goods. Plaintiff's agent disclaimed any knowledge with reference thereto. Upon the express receipt and at the top thereof in large type was the statement that the company would not pay over fifty dollars in case of loss or fifty cents per pound on shipments in excess of 100 pounds, unless a greater value was declared and higher charges paid. The shipping receipt delivered by defendant to plaintiff's agents also provided that the company was to carry the goods upon the terms and conditions indorsed upon the back of the

First Department, April, 1923. [Vol. 205

receipt, to which the shipper agreed in accepting said receipt. By the second of the terms and conditions indorsed upon the back of said receipt it was provided that:

" 2. In consideration of the rate charged for carrying said property which is regulated by the value thereof and is based upon a valuation of not exceeding Fifty dollars for any shipment of 100 pounds or less, and not exceeding Fifty cents per pound for any shipment in excess of 100 pounds, unless a greater value is declared at time of shipment, the shipper agrees that the Company shall not be liable in any event for more than Fifty dollars ($50) on any shipment of 100 pounds or less, and for not exceeding Fifty cents per pound on a shipment weighing more than 100 pounds unless a greater value is stated herein, and said property is valued at, and the liability of the Company is hereby limited to the values above stated, unless a greater value is declared at the time of shipment and stated herein, and charge for value paid or agreed to be paid therefor."

It is the contention of the appellant that, assuming the defendant, appellant, at the time of the destruction of the property in question occupied the position of a carrier, it was not liable to the plaintiff exceeding fifty cents per pound weight of the property shipped. The property weighed 885 pounds, and the appellant insists upon such assumption it is only liable to the plaintiff in the sum of $442.50.

The respondent, however, relies upon the provisions of the so-called First Cummins Amendment, which the respondent insists made it unlawful for the defendant to thus limit its liability. The Federal statute in force at the time of the shipment of plaintiff's goods, known as the First Cummins Amendment, was enacted by Congress on March 4, 1915, being chapter 176 of the acts passed at the third session of the Sixty-third Congress, and was entitled, " An Act to amend an Act entitled ' An Act to amend an Act entitled " An Act to regulate commerce," approved February fourth, eighteen hundred and eighty-seven, and all Acts amendatory thereof, and to enlarge the powers of the Interstate Commerce Commission,' approved June twenty-ninth, nineteen hundred and six." (See 38 U. S. Stat. at Large, 1196, 1197, chap. 176, amdg. Interstate Commerce Act [24 id. 386], § 20, as amd. by 34 id. 593, 595, § 7, known as the Carmack Amendment to Hepburn Bill.) The First Cummins Amendment, enacted March 4, 1915, provided that any common carrier, railroad or transportation company subject to the provisions of said act, receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory or the District of Columbia, or from any point in the United States

to a point in an adjacent foreign country, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading; and that no contract, receipt, rule, regulation or other limitation of any character should exempt such common carrier, railroad or transportation company from the liability imposed by the act, nor should any limitation of the amount of recovery or representation or agreement as to value in any receipt or bill of lading or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission without respect to the manner or form in which it was sought to be made, prevent recovery for the full actual loss, damage or injury sustained, the statute declaring that any such limitation, without respect to the manner or form in which it was sought to be made, was unlawful and void.    The statute, however, contained the following proviso: " Provided, however, That if the goods are hidden from view by wrapping, boxing, or other means, and the carrier is not notified as to the character of the goods, *the carrier may require the shipper to specifically state in writing the value of the goods, and the carrier shall not be liable beyond the amount so specifically stated,* in which case the Interstate Commerce Commission may establish and maintain rates for transportation, dependent upon the value of the property shipped as specifically stated in writing by the shipper."    (Italics are the writer's.)

We are of the opinion that, under the Federal statute governing the shipment in question, the defendant cannot avail itself of the limitation of liability provided in its shipping receipt.    Under the Federal law the defendant, as carrier, was liable for the full actual loss or damage to plaintiff's property and is not exempted from such liability by the limitation contained in its receipt.    Had the defendant required plaintiff's agents to " specifically state in writing the value of the goods " shipped, it might have limited its liability to the amount so specifically stated.    No such requirement was made of plaintiff's agents at the time of shipment.    Under the statute, in order to limit its liability, the carrier should have required the shipper to specifically state in writing the value of the goods shipped.    The case of *American Railway Express Co. v. Lindenburg* (260 U. S. 584), decided in the United States Supreme Court on January 8, 1923, dealt with a shipment made on July 22, 1918, and construed an amendment to the said statute of February

4, 1887, which amendment was enacted August 9, 1916, being chapter 301 of the acts passed by the first session of the Sixty-fourth Congress of the United States, and is known as the Second Cummins Amendment. (See 39 U. S. Stat. at Large, 441, 442, chap. 301.) Said act of August 9, 1916, amended chapter 176 of the third session of the Sixty-third Congress, and in place of the proviso enacted March 4, 1915, which was in effect at the time of the shipment with which we are dealing, provided that the provisions of the act respecting liability for full actual loss, damage or injury to property, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, should not apply to baggage carried on passenger trains or boats, or trains or boats carrying passengers, or to property, except ordinary live stock, received for transportation, concerning which the carrier was expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement should have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and should not, so far as related to values, be held to be a violation of the act to regulate commerce. Subsequently to the passage of the amendment of August 9, 1916, the Interstate Commerce Commission made an order in conformity thereto authorizing express companies to maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property. The basic rate to be established was upon a valuation not exceeding fifty dollars upon a shipment of 100 pounds or less, and not exceeding fifty cents per pound for any shipment in excess of 100 pounds, to be progressively increased with increased valuations; and the express companies were further authorized, after notice, to amend the terms and conditions of the uniform express receipt in accordance with a form prescribed. In the case of the shipment involved in *American Railway Express Co.* v. *Lindenburg (supra)*, a receipt was given for the property which stated that its terms and conditions were agreed upon by the shipper. The provision of the receipt limiting the shipper's liability was substantially the same as in the receipt in the case now before us, and there, as here, the value of the property was neither stated by the respondent nor demanded by the petitioner, and the carriage charges paid, as in the case at bar, were on the basis of the limited liability set forth in the receipt. One of the trunks, when delivered, was in bad order, and some of its contents

destroyed. The shipper claimed damages in the sum of $1,500. Liability was admitted by the defendant in the sum of $110 under the terms of said receipt. Judgment was given the plaintiff in the sum of $916.15 by the trial court, and the said recovery was affirmed by the State appellate court. The United States Supreme Court, however, reversed the lower courts and held the petitioner liable only to the extent of the limitation provided in the receipt. The shipment in the *Lindenburg* case was made after the amendment of August 9, 1916. Had the shipment in the case at bar been made after such Second Cummins Amendment, the decision in *American Railway Express Co.* v. *Lindenburg* (*supra*) would be controlling and we should be compelled to hold the defendant only for the limited liability; but the shipment in the case at bar was clearly controlled by the First Cummins Amendment which was then in force, and the only way by which the defendant could then limit its liability was by requiring the shipper to specifically state in writing the value of the goods shipped.

We are, therefore, of the opinion that the judgment and order appealed from should be affirmed, with costs to the respondent.

CLARKE, P. J., PAGE, FINCH and McAVOY, JJ., concur.

Judgment and order affirmed, with costs to respondent.